FILED
CLERK
10:38 am, Dec 01, 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DAVID MICHAEL TROTMAN JUNIOR,

Plaintiff,

-against-

OFFICER GARRETT, CAPTAIN COWEN, CAPTAIN WILSON, GARRETT, Multiple Officers present on extraction team on June 5th 2017, Officers on 2 Main Post approximately 2:00 am June 5th 2017, Officer on Post on 2 Main on June 5th 2017 approximately 10:00 pm, individually and in their official capacities,

Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
19-03788 (GRB)(LB)

**GARY R. BROWN, United States District Judge:**

By Memorandum and Order dated August 26, 2020 (Docket Entry ("DE") 20), the Court dismissed the *pro se* complaint filed *in forma pauperis* by David Michael Trotman ("plaintiff"), currently incarcerated at the Sullivan County Correctional Facility, and granted plaintiff leave to file an amended complaint within thirty (30) days. On September 24, 2020, plaintiff timely filed an amended complaint against three of the original defendants, Officer Garrett ("C.O. Garrett"), Captain Cowen ("Capt. Cowen"), and Captain Wilson ("Capt. Wilson"), and several unidentified officers. DE 21. For the reasons set forth in the August 26, 2020 Memorandum and Order, and for the reasons set forth below, plaintiff's claims brought pursuant to 42 U.S.C. § 1983 ("Section 1983") in the amended complaint against Capt. Wilson and Capt. Cowen as well as plaintiff's conditions of confinement claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). Plaintiff's remaining claims against C.O. Garrett and the unidentified officers shall proceed.

## BACKGROUND

Plaintiff commenced this action by filing a complaint and a motion for *in forma pauperis* status on June 19, 2019. Compl., DE 1; IFP Application, DE 2. The Honorable Kiyo A. Matsumoto, U.S. District Judge, to whom this case was originally assigned, granted plaintiff's *in forma pauperis* application, but ordered that "[s]ummons will not issue at this time, pending the Court's review of the complaint pursuant to 28 U.S.C. § 1915." *See* Order, dated Jan. 23, 2020. Plaintiff then filed various motions to compel, which were denied without prejudice to renewal after the Court's review of the complaint under § 1915. DE 13-14; Electronic Order dated Feb. 5, 2020. The case was then randomly reassigned to the undersigned.

The events giving rise to the complaint occurred in June 2017, during plaintiff's incarceration at the Eric M. Taylor Center ("EMTC") at Rikers Island. DE 1 at 5. Plaintiff named Officer Garrett, Capt. Cowen, Captain Wilson, Officer Herod, and Officer Weinberger as defendants. *Id.* at 1. According to the complaint, on June 4, 2017, plaintiff "refused housing because of safety issues while in the intake area of the EMTC." *Id.* at 7. On June 5, 2017, at around 2:00 or 3:00 a.m., an "extraction team" arrived to relocate plaintiff from the intake area to another facility without his property, later identified as several mixtapes titled "4+17=21," "Creepy Hollow," and "Illest Eve." *Id.* Plaintiff alleged that after this incident, he "immediately requested the location [and/or] status of his property to the officer on post" and continued to make "daily" requests for his property. *Id.*

On June 5, 2017, at around 10:00 or 11:00 p.m., plaintiff alleged that he suffered an assault by another inmate. *Id.* Plaintiff claimed that "an inmate worker threw liquids in [his] cell . . . multiple times." *Id.* Plaintiff further asserted that "while [he] was using a state issued mattress to block those attacks[,] [he] was cut on [his] lower left leg near [his] ankle" by the attacking inmate. *Id.* Plaintiff alleged that he was "observed in the EMTC . . . new clinic on

June 7th or 8th," presumably in connection with this injury. *Id.* After this treatment, plaintiff alleged that he was again "relocated without [his] property" to a new cell. *Id.*

Plaintiff identified each of the individual defendants' involvement as follows. Captain Wilson and Officer Garrett were the "security workers . . . present on [June 5, 2017], the last time Plaintiff had [his] mixtapes." *Id*. at 18. Officers Herod and Weinberger "lied [and] played games [with plaintiff] about [his] property and didn't alert supervisors or medical while inmates were splashing Plaintiff [during the foregoing incident] until days after [the] alleged slashing." *Id.* Captain Cowen "replied to a 311 complaint and lied to Plaintiff about [the] status of [his] property that was stolen or misplaced." *Id*. Plaintiff believed that Capt. Cowen stole his mixtapes "for numerous purposes" on June 4, 2017, the date of the "Summer Jam Music Festival." *Id*.

Overall, plaintiff described that he is a "very successful urban rap artist" and that he was "targeted then robbed by corrections workers, convicts, inmate gang members, that conspired collectively to ruin [his] rap career." *Id*. Plaintiff's alleged injuries are the "ruining" of his rap career, a cut left leg, and mental distress resulting from the splashing incident described above. *Id.* As relief, plaintiff sought $4.8 million, to cover "medical expenses and [the] possible value of [his] underground rapping expenses to cover hiring [a] manager[,] airfare[,] hotels[,] [and] studio time[,] among other things[,] or professional assistance such as hiring DJs[,] musical engineer[s][,] video gurls[,] or models for promotional advertisement[s]." *Id*. at 9.

By Memorandum and Order dated August 26, 2020, the undersigned dismissed the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) and granted plaintiff leave to file an amended complaint within thirty (30) days. DE 20. The Court determined that plaintiff did not sufficiently allege the personal involvement of any of the defendants in the alleged

deprivation of property or in the alleged personal injury claims arising from the assault by another inmate. *Id.* 20 at 6-8. Moreover, the Court ruled that, even if plaintiff had sufficiently alleged the officers' personal involvement, the deprivation of property claim would still fail because plaintiff did not allege that he brought, or was prevented from bringing a state law claim seeking compensation for property loss. *Id.* at 7-8.

In granting leave to amend, the Court made clear that "[s]hould plaintiff elect to file an amended complaint, he must plead facts sufficient to allege a violation of his constitutional rights and the personal involvement of each defendant named." *Id*. at 8-9. The Court also "advised that the amended complaint will completely replace the original complaint." *Id*.

**THE AMENDED COMPLAINT**

On September 24, 2020, plaintiff timely filed an amended complaint against C.O. Garrett, Capt. Wilson, Capt. Cowen, and "multiple officers present on extraction team on June 5th 2017, officers on 2 Main post [at] approximately 2:00 a.m. [on] June 5th 2017, officer on post on 2 Main on June 5th 2017 [at] approximately 10:00 p.m." ("John Does"). DE 21. Like the original, the amended complaint is brought pursuant to Section 1983 and seeks redress for deprivation of property and personal injury that allegedly occurred in June 2017 while plaintiff was incarcerated at the EMTC at Rikers Island. *Id*. at 1, ¶11.

According to the amended complaint, on June 4, 2017, "around noon", plaintiff "left 6 main with a large bag" containing "three mix tapes" and other "items for usage in the rap industry." *Id*. 1, ¶ 14. When plaintiff was relocated to the intake area in the EMTC, his bag was secured in a holding pen. *Id.* ¶ 15. Plaintiff "attempted to sign in to protective custody for [his] own protection" but was denied and then "refused [his] housing [assignment] due to safety issues." *Id.* ¶ 16-17. At around 2:00 a.m. on June 5, 2017, an "extraction team" relocated

plaintiff to "2 Main" without his property. *Id.* ¶ 18. Plaintiff claims that he asked the "John Doe officer on post" on June 5, 2017 for the "where abouts of his property" *id.* ¶ 19, and "filed numerous 311 complaints and a property loss claim form." *Id.* ¶ 23. According to plaintiff, "intentional deprivation of property is a non grievable matter." *Id.* ¶ 24. When plaintiff left EMTC in early August 2017, he did not have this property. *Id.* ¶ 25.

Also on June 5, 2017, at approximately 10:00 p.m., plaintiff alleges that he suffered an assault by other inmates. *Id.* ¶ 20. Plaintiff claims that "inmate workers slashed and cut" him while he was inside of Cell 17, Unit 2 Main. *Id.* According to the amended complaint, "Cell 17 2 Main had no running water. Toilet was not usable." *Id.* ¶ 21. On or about June 7 or 8, 2017, plaintiff was "observed" at the "new clinic for a razor cut" and was "then relocated to 3 Main cell 32 without property." *Id.* ¶ 22.

Plaintiff identified each of the individual defendants' involvement as follows. Captain Cowen "responded to 311 complaints that stem from alleged incidents on June 5, 2017." *Id.* ¶¶ 24, 32. C.O. Garrett and John Does "extracted me from intake [on June 5, 2017] to 2 Main cell 17 knowing I am unable to live around Bloods also reckless and callous indifference when they possibly left my property in the intake area." *Id.* ¶ 29. C.O. Garret and John Does also "housed me in a cell with no running water [in the] toilet & sink unsanitary conditions." *Id.* ¶ 30. Apart from the caption and the identification of the defendants section of the amended complaint, *id* ¶ 5, Capt. Wilson is not again mentioned.

Plaintiff's alleged injuries are a "razor cut" as well as generalized "pain and suffering" as well as "severe emotional distress" for which he seeks to recover compensatory and punitive damages in the sum of $16 million. *Id.* ¶¶ 20, 22, 29-31, 34.

## LEGAL STANDARD

As Judge Bianco summarized,

> A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii).
>
> It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest [ ].'" *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, - - - U.S.- - - -, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).
>
> Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*,550 U.S. at 555 (internal quotation marks and citation omitted).

*Patrick v. Bronx Care*, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at *1-2 (E.D.N.Y. Dec. 31, 2014).

**DISCUSSION**

As the Court made clear in the August 26, 2020 Memorandum and Order:

> Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13

> F.3d 515, 519 (2d Cir. 1993). To state a claim under Section 1983, a plaintiff must show (1) that some person deprived him of a federal right and (2) that the person depriving him of that right acted under color of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). *Id.* Moreover, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotations marks omitted). A Section 1983 complaint that does not allege the personal involvement of a defendant thus fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (summary order).

DE 20 at 5.

**I. Lack of Personal Involvement**

As noted above, the Second Circuit Court of Appeals has made clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid*, 593 F.3d at 249 (internal quotations marks omitted). "[B]ald assertions and conclusions of law" are insufficient to establish personal involvement. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). Moreover, an individual will not be held liable by virtue of his or her supervisory position alone. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "[P]roof of 'linkage in the prison chain of command' is [similarly] insufficient." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Rather, the Second Circuit Court of Appeals instructs that

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58

F.3d 865, 873 (2d Cir. 1995)) (emphases added) (additional citation omitted).

Here, plaintiff names Capt. Wilson as a defendant in the caption and in the identification of defendants section, but does not mention him at all in the body of the amended complaint. DE 21. Plaintiff alleges no facts showing that he had any direct involvement with, knowledge of, or responsibility for the alleged deprivation of his civil rights. *Grullon*, 720 F.3d at 138; *Farid*, 593 F.3d at 249; *Hernandez*, 341 F.3d at 144 ("[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior. . . ." (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). Thus, as is readily apparent, plaintiff has not alleged a plausible claim against Capt. Wilson.

Similarly, plaintiff alleges only that Captain Cowen "responded to 311 complaints that stem from alleged incidents on June 5, 2017." DE 21 at ¶¶ 24, 32. As is readily apparent, this bare allegation does not allege any facts as to how Capt. Cowen deprived plaintiff of a constitutional right. *See*, *e.g.*, *Iqbal*, 556 U.S. at 676 ("'Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Accordingly, plaintiff's claims against Capt. Wilson and Capt. Cowen are dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

**II. Deprivation of Property Claim**

Even if plaintiff had alleged the officers' personal involvement, his deprivation of property claim would still fail. Notwithstanding the Court's guidance that a deprivation of property claim under the Fourteenth Amendment requires a plaintiff to

> show either (1) that an 'established state procedure' deprived him of property 'without according him proper procedural safeguards,' *Logan v. Zimmerman*

> *Brush Co*., 455 U.S. 422, 436 (1982), or (2) that 'random and unauthorized conduct' of a state employee resulted in the intentional deprivation of property and that 'a meaningful postdeprivation [state] remedy for the loss [was not] available.' *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)

DE 20 at 7, the amended complaint does not address either prong. *See* DE 21, *generally*.

> It is well established that New York provides inmates with the opportunity for a meaningful postdeprivation hearing through state law causes of action for 'negligence, replevin, or conversion which could fully compensate [the plaintiff] for his alleged property loss. *Toliver v. City of New York*, No. 10-CV-5806 (SHS)(JCF), 2013 WL 6476791, at *7 (S.D.N.Y. Dec. 10, 2013) (quoting *Cook v. City of New York*, 607 F. Supp. 702, 704 (S.D.N.Y. 1985))."

DE 21 at 8 (internal quotation makes omitted). Plaintiff alleges only that "intentional deprivation of property is a non grievable matter" and that he filed "numerous 311 complaints and a property loss claim form", DE 21 ¶¶ 23-24, and has wholly ignored the Court's finding that, in the absence of any allegations "that he brought, or was otherwise prevented from bringing, a state law cause of action seeking compensation for property loss, [ ] plaintiff has not stated a due process claim for the loss of his personal items." *See* DE 20 at 8 (citing *Leneau v. Ponte*, No. 16-CV-776 (GHW), 2018 WL 566456, at *9 (S.D.N.Y. Jan. 25, 2018); *Corley v. City of New York*, No. 14-CV-3202 (GHW), 2017 WL 4357662, at *7 (S.D.N.Y. Sept. 28, 2017)). Despite an opportunity to do so, plaintiff has asserted no new facts in the amended complaint. Accordingly, plaintiff's deprivation of property claim fails to state a claim for relief and is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

**III. Deliberate Indifference Claims**

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). The Eighth Amendment requires that prison officials take "reasonable measures to guarantee the safety of inmates in their

custody." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Gilmore v. Rivera*, No. 13-CV-6955 (RWS), 2014 WL 1998227 at *2 (S.D.N.Y. May 14, 2014) ("Prison officials may neither deprive a prisoner of 'basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety,' nor expose an inmate to conditions that 'pose an unreasonable risk of serious damage to his future health.'") (quoting *Helling v. McKinney*, 509 U.S. 25, 32, 35(1993)). Prisoners are entitled to satisfaction of their basic human needs although "comfort within prisons is not constitutionally required." *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)) ("[T]he Constitution does not mandate comfortable prisons . . . .").

**A. Failure to Protect Claim**

Prison officials may be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To establish a failure to protect claim, a plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety. *Id*. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Here, plaintiff claims that C.O. Garrett and John Does "extracted me from intake [on June 5, 2017] to 2 Main cell 17 knowing I am unable to live around Bloods" and "inmate workers slashed and cut" him. DE 21 ¶¶ 20, 29. Though thin, plaintiff's failure to protect claim against C.O. Garrett and the unidentified corrections officers shall proceed.

The United States Marshals Service ("USMS") is directed to serve the summons, amended complaint, and this Memorandum and Order upon C.O. Garrett without prepayment of fees. However, no summonses shall issue at this time for the remaining defendants. The Court requests the Office of the Corporation Counsel in accordance with *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997) (*per curiam*), to ascertain the full names of the corrections officers who are alleged to have been involved in the June 5, 2017 incident at EMTC as described in the amended complaint. The Corporation Counsel of the City of New York is to provide the full names of the Jane and/or John Doe Officers and is also requested to provide the address(es) where these individuals can currently be served. The government need not undertake to defend or indemnify these individuals at this juncture.

The Office of Corporation Counsel is requested to provide the identities of the Jane and/or John Doe defendants and the address(es) where they can be served to the Court within forty-five (45) days from the date of this Order. Once the officers have been identified, plaintiff's amended complaint shall be deemed amended to reflect the full name of these individuals as defendants, summonses shall issue and the Court shall direct service on these defendants.

**B. Conditions of Confinement**

"To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'" *Jelen v. United States Marshals Serv.*, No. 18-CV-

680, 2020 WL 1503566, at *5 (S.D.N.Y. Mar. 30, 2020), quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). In order to satisfy the objective prong, an inmate must allege that he was confined under conditions that caused a "sufficiently serious" deprivation, such as the denial of a "life[ ] necessity[y]" or a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *see also Torrez v. Semple*, No. 3:17-CV-1232 (SRU), 2018 WL 2303018, at *5 (D. Conn. May 21, 2018).

Here, plaintiff alleges that, on June 5, 2017 at approximately 10:00 p.m., he was "inside of Cell 17 Unit 2 Main" and that "Cell 17 2 Main South Side had no running water. Toilet was not usable." DE 21 ¶¶ 20-21. On "June 7th or 8th, 2017", plaintiff was relocated to 3Main Cell 32. *Id.* ¶ 22. Plaintiff claims that C.O. Garrett and John Does violated his Eighth Amendment rights "when they housed me in a cell with no running water. Toilet & sink. Unsanitary conditions resulted in pain and suffering and severe emotional distress." *Id.* ¶ 30.

The short duration of the alleged conditions hardly gives rise to a "sufficiently serious" deprivation. *See Johnson v. Schiff*, No. 17-CV-8000 (KMK), 2019 WL 4688542, at *16 (S.D.N.Y. Sept. 26, 2019) (dismissing conditions of confinement claim where plaintiff alleged that for one day his toilet was dysfunctional and overflowing, causing his cell to smell) (citing *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 277 (N.D.N.Y. 2018) (dismissing conditions-of-confinement claim based on lack of "functioning toilet or running water for four days" (citation omitted)); *Florio v. Canty*, 954 F. Supp. 2d 227, 235-36 (S.D.N.Y. 2013) (holding that two instances of confinement in cells with overflowing toilets and being forced to walk through ankle-high human waste was "simply too minor to state an Eighth Amendment claim")). Thus, as is readily apparent, plaintiff fails to satisfy the objective prong of his conditions of

confinement claim. Accordingly, this claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).[1]

## CONCLUSION

Based on the foregoing, the claims against Capt. Wilson and Capt. Cowen as well as the conditions of confinement claims against C.O. Garrett and the unidentified officers are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). Plaintiff's remaining claims against C.O. Garrett and the unidentified officers shall proceed. The USMS is directed to serve the summons, amended complaint, and this Memorandum and Order upon C.O. Garrett without prepayment of fees. The Clerk of the Court is directed to forward the summons, amended complaint, and this Memorandum and Order to the USMS for service forthwith.

However, no summonses shall issue at this time for the remaining, unidentified defendants. The Court directs the Clerk of the Court to serve a copy of this Memorandum and Order upon the Office of the Corporation Counsel and requests that the Corporation Counsel provide the identities of the Jane and/or John Doe defendants and the address(es) where they can be served to the Court within forty-five (45) days from the date of this Order. Once the officers

---

[1] Given that plaintiff has not suffered any physical injuries as a result of the alleged conditions, leave to amend this claim would be futile. 28 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .); *see* *Oneil v. Rodriguez*, No. 18-CV-3287(AMD)(LB), 2020 WL 5820548, at *5 (E.D.N.Y. Sept. 30, 2020)(dismissing excessive force claim where allegations were insufficient to meet the "physical injury" requirement of Section 1997e(e)); *Dash v. Doe*, No. 19-CV-414(GBD)(JLC), 2020 WL 3057133, at *4 (S.D.N.Y. June 9, 2020) ("[I]n the absence of a showing of physical injury, a prisoner cannot recover compensatory damages for mental or emotional injury.") (internal quotation marks and citation omitted). Accordingly, leave to amend the conditions of confinement claim is denied.

have been identified, plaintiff's amended complaint shall be deemed amended to reflect the full name of these individuals as defendants, summonses shall issue and the Court shall direct service on these defendants.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should plaintiff seek leave to appeal *in forma pauperis*, any appeal from this Order would not be taken in good faith. Therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court is directed to mail a copy of this Order to the *pro se* plaintiff at his address of record and note service on the docket.

**SO ORDERED**.

Dated: December 1, 2020
Central Islip, New York

GARY R. BROWN
United States District Judge